# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAMELA I. ROBERTS,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 14 C 3659<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela I. Roberts filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the Commissioner's decision is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari,* 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[1] A

---

[1] The regulations governing the determination of disability for SSI are found at 20 C.F.R. § 416.901 et seq. The standard for determining SSI DIB is virtually identical to that

person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

used for Disability Insurance Benefits (DIB). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI on February 14, 2011, alleging that she became disabled on June 1, 2009, because of stomach swelling, back pain, dizziness, sinusitis, difficulty walking, and lung and brain issues. (R. at 107, 196, 200). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 92, 102, 107, 129–32). On February 13, 2013, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 38–84, 107). The ALJ also heard testimony from Ashok Jilhewar, M.D., a medical expert (ME), and Jill Peters, a vocational expert (VE). (*Id.* at 38–84, 107, 173, 174).

The ALJ issued a partially favorable decision on March 4, 2013. (R. at 107–19). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since February 14, 2011, the alleged onset date. (*Id.* at 109). Beginning at step two, the ALJ bifurcated her analysis and determined that Plaintiff was not disabled prior to September 14, 2012, but became disabled on that date and has continued to be disabled through the date of her decision. (*Id.* at 119). Specifically, the ALJ found that prior to September 14, 2012, Plaintiff had the following medically determinable impairments: hypertension, back pain, obesity, and anxiety. (*Id.* at 109). However, Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) her ability to perform basic work related activities for 12 consecutive months. (*Id.*). Therefore, the ALJ found that prior to Sep-

tember 14, 2012, Plaintiff did not have a severe impairment or combination of impairments. (*Id.*). Accordingly, the ALJ concluded that Plaintiff was not disabled prior to September 14, 2012, as defined by the Act. (*Id.* at 119).

The Appeals Council denied Plaintiff's request for review on March 24, 2014. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Plaintiff completed a number of reports as part of her disability application, in which she attested to various mental limitations. In March 2011, she complained that her physical ailments were causing stress. (R. at 214). In May, she reported feeling depressed. (*Id.* at 228). A month later, Plaintiff reported anxiety attacks. (*Id.*

at 241). She avoids driving because her thoughts are not clear, and she leaves her house only to go shopping. (*Id.* at 238–39). In November, Plaintiff complained of depression and anxiety. (*Id.* at 253). In April 2012, she reported constant crying and feeling depressed, sad, and "low" every day. (*Id.* at 269).

On August 1, 2011, Joan F. Hakimi, Psy.D., a licensed clinical psychologist, reviewed the medical record and performed a psychological examination on behalf of the Commissioner. (R. at 327–30). Plaintiff presented with dirty hair, unpleasant body odor, poor grooming, poor hygiene, and appeared older than her stated age. (*Id.* at 327). She complained of anxiety and reported no friends and seldom going anywhere. (*Id.* at 327–28). The mental status examination was largely unremarkable. (*Id.* at 328–30). Dr. Hakimi diagnosed anxiety disorder NOS. (*Id.* at 330).

On August 17, 2011, Michael J. Schneider, Ph.D., a nonexamining, state-agency consultant, reviewed the record and completed a Disability Determination Explanation. (R. at 93–97). He acknowledged Plaintiff's complaints of depression and Dr. Hakimi's diagnosis but found that Plaintiff's anxiety causes only mild restrictions of daily living and no difficulties in maintaining social functioning or in maintaining concentration, persistence, or pace. (*Id.* at 94, 96–97). Dr. Schneider concluded that Plaintiff's anxiety disorder was secondary to her physical ailments and was nonsevere. (*Id.* at 97).

In August 2011, Plaintiff began treating with Nichole Lupei, D.O. (R. at 337). On October 14, 2011, she reported anxiety, ennui, crying spells, and agoraphobia. (*Id.* at 342). On examination, she was tearful. (*Id.*). Dr. Lupei diagnosed dysthymia and

anxiety and prescribed Zoloft. (*Id.*). Plaintiff stopped taking the Zoloft after one month because she could not afford to refill it. (*Id.* at 378).

On August 15, 2012, Plaintiff began treating with Ahren Agase, M.D. (R. at 378). She complained of feeling worthless, chronic tearfulness, fatigue, ennui, insomnia, suicidal ideations, guilt of being a burden on her sister, and social anxiety. (*Id.*). She reported leaving the house only to do shopping with her roommate. (*Id.*). On examination, Plaintiff was mildly disheveled, had stooped posture, described a worthless mood, and exhibited a constricted affect. (*Id.* at 379). Dr. Agase diagnosed major depressive disorder, switched her medication from Zoloft to fluoxetine (Prozac), and referred her for psychotherapy. (*Id.*). On September 14, 2012, Plaintiff reported suicidal ideations, fatigue, ennui, social anxiety, and guilt. (*Id.* at 375). On examination, she exhibited slow speech and constricted affect. (*Id.* at 376). Dr. Agase diagnosed major depressive disorder and increased the fluoxetine dosage. (*Id.*).

Plaintiff began treating with Stephan Romm, Psy.D., in August 2012. (R. at 369). On August 28, Plaintiff complained of agoraphobia, social anxiety, and obsessive compulsive behavior. (*Id.*). Dr. Romm diagnosed a generalized anxiety disorder. (*Id.*). On October 10, Plaintiff reported multiple psychosocial stressors, including lack of income and physical ailments. (*Id.* at 368).

At the hearing, Plaintiff testified to chronic panic attacks, which have worsened in the past couple of years. (R. at 66, 69). She gets nervous when she has to leave the house for an appointment or to be somewhere at a particular time and finds it hard to breathe. (*Id.* at 66–67). Plaintiff avoids public transportation because being

around a lot of people triggers panic attacks. (*Id.* at 68). She averages two attacks per week, each lasting 20–30 minutes. (*Id.* at 67). During an attack, she is unable to do anything and has to lie down until the fear subsides. (*Id.*). Plaintiff is taking Prozac, but it doesn't help very much. (*Id.* at 68).

## V. DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because she (1) made a flawed credibility analysis, (2) failed to demonstrate that Plaintiff's mental impairment was nonsevere, and (3) improperly weighed the opinion evidence. (Dkt. 16 at 1–2).

An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); Social Security Ruling (SSR)[2] 96-7p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p.

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

Plaintiff testified to chronic panic attacks that occur at least twice weekly for 20–30 minutes and affect her ability to leave the house. (R. at 66–69). She also re-

ported depression and anxiety, which results in jumbled thoughts and constant crying. (*Id.* at 214, 228, 238–39, 240, 253, 269).

In her decision, the ALJ found Plaintiff's allegations of disabling impairments prior to September 14, 2012, "not entirely credible." (R. at 112). Specifically, the ALJ concluded that Plaintiff's anxiety allegations were not supported by the medical evidence because there was intermittent treatment, inconsistent complaints to her treating physicians, and noncompliance with medications. (*Id.* at 112–15). The ALJ also found that the consultative psychological examination was largely normal. (*Id.* at 113). Finally, the ALJ noted that Plaintiff's admitted ability to shop in public places, perform household chores, speak with friends via the telephone, and follow written and spoken instructions belies her allegations of a severe mental impairment. (*Id.* at 114).

Under the circumstances, none of the reasons provided by the ALJ for rejecting Plaintiff's credibility are legally sufficient or supported by substantial evidence. First, Plaintiff's allegations are supported by the medical evidence. Prior to September 14, 2012, she consistently complained to her doctors about anxiety, agoraphobia, ennui, crying spells, fatigue, insomnia, and suicidal ideations. (R. at 327–28, 342, 369, 375, 378). On examination, her doctors observed poor grooming, tearfulness, constricted affect, slow speech, and depressed mood during the pertinent time period. (*Id.* at 327, 342, 376, 379). Her medical sources diagnosed anxiety, dysthymia, and major depressive disorder. (*Id.* at 330, 342, 369, 379).

Second, the ALJ failed to properly evaluate Plaintiff's noncompliance and gaps in treatment. Plaintiff explained that she could not afford her medications. (R. at 378). She also gets nervous when she has to leave the house for a doctor's appointment. (*Id.* at 66–67). In the Seventh Circuit, "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Craft*, 539 F.3d at 678–79; *see* SSR 96-7p. Prior to drawing a negative inference about a claimant's symptoms and their functional effects from a failure to attain certain treatment, however, the ALJ must first consider any explanations that the individual may provide or other explanatory information in the case record. SSR 96-7p; *see Craft*, 539 F.3d at 678–79 ("An inability to afford treatment is one reason that can 'provide insight into the individual's credibility.'") (citing SSR 96-7p). But here, the ALJ did not question Plaintiff at the hearing to determine why she was noncompliant. *See* SSR 96-7p, at *7 (The ALJ "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner."). Further, people with serious mental impairments are often unable to take their medications consistently. Indeed, the Seventh Circuit has cautioned ALJs against placing too much weight on the noncompliance of a mentally impaired claimant. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("[P]eople with serious psychiatric problems are often incapable of taking their prescribed medications consistently."). And Plaintiff's gaps in treat-

ment are consistent with her complaints of agoraphobia and social anxiety. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 429 (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*) (agoraphobia and social phobia are characterized by avoidance behaviors).

Third, the ALJ misconstrued Plaintiff's activities of daily living. While Plaintiff acknowledged occasionally shopping in public places, the ALJ failed to consider that she shops only once or twice every two weeks and generally only when her roommate accompanies her. (R. at 62–63, 211). While Plaintiff is capable of driving a car, she rarely does because of panic attacks when she is alone. (*Id.* at 64–65). The ALJ failed to explain how Plaintiff being able to complete household chores equates to an ability to perform full-time work. While it is permissible for an ALJ to consider a claimant's daily activities when assessing credibility, the Seventh Circuit has repeatedly instructed that ALJs are not to place "undue weight" on those activities. *Moss*, 555 at 562; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Further, the ALJ failed to explain how speaking with friends on the telephone or following simple instructions contradicts Plaintiff's allegations of panic attacks, agoraphobia, social anxiety, and depression.

Fourth, the lack of laboratory findings does not contradict Plaintiff's allegations. Anxiety and depression are not diagnosed by laboratory tests. *DSM-IV* at 352 ("No laboratory findings that are diagnostic of a Major Depressive Episode have been identified."); *id.* at 435 ("No laboratory findings have been identified that are diagnostic of a Panic Disorder."), 452 ("Thus far, no laboratory test has been found to be diagnostic of Social Phobia, nor is there sufficient evidence to support the use of any laboratory test . . . to distinguish Social Phobia from other Anxiety Disorders (e.g., Panic Disorder)."). Instead, laboratory tests are generally performed to rule out other causes of a patient's symptoms, and the diagnoses are made only after the health care professional conducts in-depth interviews with the patient. Thus, Dr. Hakimi's "unremarkable mental status examination in her consultative examination" (R. at 115; *see id.* at 328–30) does not establish that Plaintiff's mental impairments were nonsevere. To the contrary, by diagnosing Plaintiff with an anxiety disorder, Dr. Hakimi necessarily found that that Plaintiff's mental impairments caused more than a minimal effect on her ability to work. *See DSM-IV* at 484 (noting that anxiety disorder NOS "includes disorders with prominent anxiety or phobic avoidance"); *Chapman v. Barnhart*, 189 F. Supp. 2d 795, 804 (N.D. Ill. 2002) ("A disability claimant can be considered as not suffering from a severe impairment only if the impairment is a slight abnormality having only a minimal effect on a person's ability to perform the full range of work-related activities.").[3]

---

[3] *See also* <http://www.mayoclinic.org/diseasesconditions/anxiety/basics/symptoms/con-20026282> (Anxiety NOS is a diagnosis for anxiety or phobias that do not meet the exact

Finally, the ALJ's reliance on the nonexamining doctor's opinion is not supported by substantial evidence. Dr. Schneider relied on Dr. Hakimi's "unremarkable mental status examination" to conclude that Plaintiff's anxiety disorder was secondary to her physical ailments and was nonsevere.[4] (R. at 93–97). But, as discussed above, anxiety is not diagnosed with laboratory tests. And Dr. Schneider issued his opinion without the benefit of Drs. Lupei's, Agase's and Romm's treatment notes and diagnoses. Most significantly, Dr. Agase's major depressive disorder diagnosis and Dr. Lupei's dysthymia diagnosis indicate that Plaintiff's symptoms "cause clinically significant distress or impairments in social, occupational, or other important areas of functioning." *DSM-IV* at 356, 381. Thus, the medical record indicates that Plaintiff's mental impairments caused more than a minimal effect on her ability to work. SSR 96-3P, at *1 ("At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This pre-

---

criteria for any other anxiety disorders but are "significant enough to be distressing and disruptive.").

[4] Contrary to Agency guidelines, the ALJ failed to determine the weight to be given Dr. Hakimi's opinion. 28 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). On remand, the ALJ shall reevaluate the weight to be afforded to Dr. Hakimi's opinion.

vents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth above, the Court finds the ALJ's credibility determination "patently wrong." *Craft*, 539 at 678. On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ shall then reevaluate Plaintiff's mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff could have performed prior to September 14, 2012.

## V. CONCLUSION

For the reasons stated above Plaintiff's Motion for Summary Judgment [15] is **GRANTED,** and Defendant's Motion for Summary Judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: December 18, 2015

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge